JOSEPH CHARLESS CABANNE, *et al.*, Plaintiffs in Error, *vs.* T. K. SKINKER, Ex'r of ROBERT FORSYTH, *et al.*, Defendants in Error.

1. *Wills—Extra-territorial operations of—Responsibility of executor.*—So far as realty is concerned, **a** will has no extra-territorial force, and the executor cannot sue for, or in anywise intermeddle with, property of his testator, real or personal, in another State, unless the will be there proven, or the laws of such States, dispensing with the probate anew, confer the requisite jurisdiction; and hence, where no such provisions prevail, he cannot be held liable, on his bond as executor, for his acts done in another State. Whether he might not be chargeable as trustee for misapplication of funds received in another State, not passed on by the court.

*Error to St. Louis Circuit Court.*

*C. C. Whittlesey, and R. H. Spencer,* for Plaintiffs in Error.

I. If an executor or administrator receive assets from abroad, he and his sureties are liable for the same. (Pipkin vs. Casey, 13 Mo., 349; Pratt vs. Northam, 5 Mass., 95; Shultz vs. Pulver, 3 Paige Ch., 182; S. C. on appeal affirmed, 11 Wend., 361; Lyman vs. Parsons, 20 N. Y., 103; Collins vs. Bankhead, 1 Strob., 25; Judge Probate vs. Heydock, 8 N. H., 491; Dowdall's case, 6 Coke., 48; Williams vs. Storrs, 6 Jurist Ch., 363; Doolittle vs. Lewis, 7 Jurist Ch., 45; Sto. Conf. L., § 518; Trecothick vs. Austin, 4 Mass., 33; Vroom vs. Van Horne, 10 Paige Ch., 549; Sherwood vs. Wooster, 11 Paige Ch., 441.)

II. A foreign administrator bringing assets into this State could be held accountable here in equity, if not as executor *de son tort.*

In Campbell vs. Tousey, (7 Cow., 64,) the foreign administrator was held responsible as executor *de son tort.* The authority of that case is questioned, but in States using the common law practice of administering estates it would seem to be correct. But equity would have jurisdiction, where a proper case was presented. (McNamara vs. Dwyer, 7 Paige Ch., 239, cited and approved in Lyman vs. Parsons, 20 N. Y., 103; Ordronaux vs. Helie, 3 Sandf., Ch. 512; Suarez vs.

Mayor, etc., 2 Sandf., Ch. 173 ; Pugh's Ex'r vs. Jones, 6 Leigh, 299 ; Tunstall vs. Pollard, 11 Leigh, 1 ; Pipkin vs. Casey, 13 Mo., 349.)

III. The executor, deriving his authority from the will of his testator, has greater power than an administrator deriving his authority solely from the law of the State appointing him. The will is universally recognized, the statute is of no force outside of the State enacting it. (Rand vs. Hubbard, 4 Metc. Mass., 255 ; Taylor vs. Benham, 5 How., [U. S.] 233 ; 2 Kent's C., 430, n. *a*, and 431, n. *c*.)

*Samuel Reber*, for Defendants in Error.

I. Tesson, the executor, is not accountable as such for the proceeds of the Colorado Mine. (Peck vs. Mead, 2 Wend., 470 ; Morrill vs. Morrill, 1 Allen, 132 ; Aston's Est., 5 Whart., 228 ; Jacobs vs. Bull, 1 Watts, 370 ; Sto. Confl. Law, § 523 ; Hooker v. Olmstead, 6 Pick, 481.)

II. If we are to consider the suit as an attempt to hold the executor (and his sureties) liable as a trustee, on the ground that he has speculated on the trust fund, the petition is wholly insufficient, because it is not drawn with that view, or on that theory.

SHERWOOD, Judge, delivered the opinion of the court.

This was a proceeding in the nature of a bill in chancery to set aside, as fraudulently made, the annual settlements and the final settlement of the estate of John P. Cabanne, deceased—Edward P. Tesson being executor of the last will of the decedent —for taking an account of the sums of money received by Tesson during the course of his administration, and for judgment in favor of plaintiffs, who claim as residuary devisees and legatees of Cabanne, against said executor and the sureties *on his bond*. The petition is as follows:

Petitioners state, that John P. Cabanne, the brother of the petitioners, died on or about April 18, 1863, having made and published his last will, bearing date September fifteenth, eighteen hundred and sixty, which said will was duly proven

before the St. Louis Probate Court on April 24th, 1863; that by said will said John P. directed that all his debts should be paid out of the real and personal estate devised and bequeathed to the plaintiffs, and he therein devised to his mother, Virginia C. Cabanne, two lots in Carr's addition, and directed his executor, Edward P. Tesson, to erect and build on said lots a dwelling house, to cost not less than $5,000, nor more than $10,000.

And subject to said bequest and devise, said John P. Cabanne bequeathed and devised the rest, residue and remainder of his estate, real, personal and mixed, to his brothers, the plaintiffs, Joseph C. Cabanne and Sarpy C. Cabanne, in equal shares as tenants in common.

The petition further states, that on May 1, 1863, said Edward P. Tesson duly qualified as executor, and gave bond to the State of Missouri in the penal sum of forty thousand dollars with the said defendants, Robert Forsyth and Pierre A. Berthold, as sureties, as required by law. Said bond was subject to a condition, that if the said Edward P. Tesson, executor of the last will and testament of said John P. Cabanne, should well and faithfully execute the said last will and testament, and should make true and faithful inventories, returns and settlements of account of the estate of the testator according to law, and should moreover do and perform all other matters and things touching the execution of said last will and testament as are or shall be prescribed by law or enjoined on him by the order, sentence or decree of any court having competent jurisdiction, then said obligation to be void, otherwise to remain in full force.

And thereupon letters testamentary, dated May 1, 1863, were by said St. Louis Probate Court duly issued to said Edward P. Tesson, as executor of the last will of said John P. Cabanne, and it thereby became and was the duty of the said Edward P., as executor, to look after and protect the property of the said John P. Cabanne, wherever situate, for the benefit of the creditors of the said John P. and his legatees and devisees, and especially for the benefit of the plaintiffs as residuary legatees and devisees of the said John P. Cabanne.

Sometime in the year eighteen hundred and sixty, the said John P. Cabanne purchased a valuable gold mine in Gilpin county, Colorado Territory, for which he paid the sum of ten thousand dollars. Said mine was known as the Bobtail Lode Gold Mine.

On or about April 1, 1861, said John P. Cabanne formed a co-partnership with Lamar E. Suber, who had been a clerk for Edward P. Tesson, and with Edward M. Tesson, a son of said Edward P., for the purpose of working said Bobtail Lode Gold mine, and other mines. The articles of said co-partnership were reduced to writing.

By the terms of said articles, it was agreed that said John P., Lamar E., and Edward M. should be jointly interested in the profits and losses of working said Bobtail Lode Gold Mine, each taking one-third of the profits, and paying one-third of the losses, but that said Suber and Edward M. did not purchase any part of the title, interest or estate of the said John P. in the realty of said mine, and by the terms of said articles, the title and ownership of said mine remained in said John P. Cabanne, and any title and interest remaining in said John P. at the time of his death vested in the plaintiffs as devisees, subject to debts due by him.

The petition states, that Edward P. Tesson was doing a banking business in the city of St. Louis from the year 1860 to the year 1864, under the name and style of Tesson and Danjen, and from the year 1864 to the date of his bankruptcy, in 1868, did business under the name and style of Tesson, Son, & Co., part of the time the firm being composed of the said Edward P. Tesson, Lamar E. Suber and Edward M. Tesson, the said Suber dying about A. D. 1865, and said Edward M. continuing until January 3, 1868, when said firm was adjudged bankrupt; that said Cabanne, Suber and Edward M. Tesson worked said Bobtail Lode Gold Mine, and other mines and mills for about two years, but made no profits to be divided, and became indebted to said Edward P. Tesson, doing business as Tesson & Danjen, in a large amount, but to what amount your petitioners cannot accurately state, but with ten

per cent. interest, the rate charged by said Tesson & Danjen, the balance due on May 9, 1864, as appears by the books of Tesson and Danjen, was about the sum of $19,207.40 ; that the partnership of said Cabanne, Suber & Tesson was dissolved by the death of John P. Cabanne on or about April 18th, 1863 ; in the year eighteen hundred and sixty-two the said firm of Cabanne, Suber & Tesson became indebted to Benjamin F. Lathrop, of Colorado, who commenced suit against said firm, and process being served only on John P. Cabanne, the suit was dismissed as to said Suber and Tesson, and judgment was rendered on July 31, 1862, by the district court of said Territory in favor of said Lathrop against said John P. Cabanne for the sum of $490.48, which judgment was a lien upon the real estate of John P. Cabanne ; that by virtue of an execution issued upon said judgment, the sheriff of Gilpin county, in said Territory, did levy upon and seize all the title and estate of said John P. in said Bobtail Lode Gold Mine, and on November 6, 1862, said sheriff did sell the said mine to said Lathrop, the plaintiff in the execution, for the debt and costs, and thereupon said sheriff did give to said Lathrop, as provided by the statutes of said Territory, a certificate of his purchase, and that said Lathrop would be entitled to a deed if said land was not redeemed by said John P., his heirs, executors, administrators or assigns within twelve months, or by a judgment creditor within fifteen months ; that it was provided by the statutes of said Colorado Territory, then in force, that when the real estate of a judgment debtor should be sold under an execution issued upon a judgment, said judgment debtor, his heirs, executors, administrators and assigns might redeem said lands by paying the amount of the bid or purchase money, with ten per cent. interest, to the purchaser, at any time within twelve months, and it was also provided that said sheriff's certificate should be assignable, and that the assignee of the purchaser should be entitled to receive the sheriff's deed; that said Edward P. Tesson, after the death of said John P. Cabanne, and after he had taken out letters testamentary on the estate of said John P., to-wit, in the month of August, A. D. 1863,

employed an attorney to go out to Colorado to examine into the affairs of said Cabanne, Suber & Tesson, and of said John P., and said attorney, out of moneys collected by him belonging to said John P., or said Cabanne, Suber & Tesson, paid to said Lathrop the sum of $587.25, and said Lathrop thereupon assigned to said Edward P. Tesson said certificate of purchase of said mine, whereby said Tesson became entitled to demand and receive the sheriff's deed for said Bobtail Lode Gold mine, so sold as aforesaid, as the assignee of said Lathrop; that in March, A. D. 1864, the said Edward P. Tesson, being still executor as aforesaid, employed an attorney and agent to go to New York with Edward M. Tesson, to try to effect a sale of said Bobtail Lode Gold mine, and said attorney and Edward M. did effect a sale of the mine so acquired by said Edward P. Tesson as aforesaid from said Lathrop to the Bobtail Lode Gold Mining Company for the sum of fifty thousand dollars, and said Edward P. Tesson received for said mine, after deducting exchange, the sum of forty-nine thousand nine hundred and thirty-seven 50-100 dollars, on May 27, A. D. 1864, and brought said fund into the State of Missouri, and credited the same upon his books to the account of said firm of Cabanne, Suber & Tesson, when the same should have been credited to the account of John P. Cabanne's estate, of which said Tesson was then executor, and continued so to be until June, A. D. 1866; that said John P. Cabanne, on September 4, 1862, executed to Wm. P. Miller, trustee of Virginia C. Cabanne, a mortgage or deed of trust to secure the payment of a note dated June 17, 1861, for $10,000, payable three years after date, and three interest notes of $500, each payable in six, twenty and thirty-six months after date, and after said agreement made by said Tesson to sell said mine, said Virginia C. Cabanne, to enable said Tesson to complete said sale, executed to him, as executor of John P. Cabanne, a release of said mortgage, dated April 24, 1864; that it was the duty of said Edward P. Tesson, as executor of the last will of the said John P. Cabanne, to have redeemed said land from said judgment and execution sale for the benefit of the plaintiffs as residuary

legatees and devisees, and the said Edward P., in purchasing said certificate and in taking said assignment of said certificate from said Lathrop, was in law trustee for the benefit of the plaintiffs, and in making said sale of said mine and in receiving said sum of $49,937.50, said Edward P. was chargeable as their trustee, and was and is liable to account to them for said sum of money thus received, and should have accounted for the same in the accounts filed by him in the St. Louis Probate Court as assets of said estate of John P. Cabanne; that although said Edward P. Tesson received said sum of $49,-937.50 as the proceeds of the property of John P. Cabanne, yet the said Edward P. fraudulently and in violation of his duty as executor, and disregarding the rights of the plaintiffs as residuary devisees and legatees of John P. Cabanne, converted said sum of $49,937.50 to his own use, and although the said Edward P. made a settlement of his doings, as execu-tor at the June Term, A. D. 1864, of the St. Louis Probate Court, yet the said Edward P. neglected to report said sale and the receipt of said money to said Probate Court, and failed to charge himself in his account with said sum of $49,-937.50, as it was his duty to have done; that although it appeared upon the books of Tesson & Danjen that said firm of Cabanne, Suber and Tesson was indebted to said Edward P. Tesson, and that said John P. Cabanne was also indebted to said Edward P. Tesson on his private account, yet the said Edward P., being executor, failed to present his accounts for allowance against the estate of said John P. Cabanne at said June Term, A. D. 1864, of said Probate Court or at any other term of said Court, and never had said accounts or the debts appearing to be due thereby allowed at any time, so that plaintiffs, who were infants, and their guardian, Lucien D. Cabanne, never had the opportunity to investigate the same; that at the date of his death, the said John P. Cabanne left a large real estate in the counties of St. Louis and Jefferson in this State, exceeding in value $50,000, all which was liable to the payment of the debts of the said John P.; that, after the receipt of the said sum of $49,937.50, the said Edward P. paid to

said Virginia C. Cabanne the said mortgage debt of ten thousand dollars and three interest notes amounting to $1,500; that, at his annual settlement at the June Term, 1864, of said Probate Court, said executor charged himself with $148 of personal property, and credited himself with the sum of of $1,059.62, which included two of said interest notes of $500 each, and showing a balance in his favor of $911.62; that, at his annual settlement at the June Term, A. D. 1865, of said Probate Court, he credited himself with said balance of $911.62 and with the third of said interest notes of $500, and showing a balance in his favor of $1,455.44; that, at the June Term, 1866, of said Probate Court, the said executor made a final settlement and credited himself with said balance of $1,455.44, and showed that he had paid all the debts allowed against the estate of said John P. Cabanne, excepting one allowed December 28, 1863, in favor of T. H. Richardson, for the sum of $1,175.29, and showing a balance in his favor of $2,109.59, and on the 18th June, 1866, said Edward P. Tesson was by said Probate Court finally discharged. A copy of the report of said settlements is herewith filed.

The petition alleges, that on April 19, 1867, said Edward P. Tesson presented to Lucien D. Cabanne, guardian of the plaintiffs, an account charging the estate of John P. Cabanne with the sum of $2,222.59 as the balance found in his favor at his final settlement, and also with $5 retained for expenses of final settlement, whereas said sum of $2,109.59 was the true sum allowed, and included said sum of $5; and said Edward P. also charged said claim in favor of T. H. Richardson, allowed December 28, 1863, and also charged $289.85 as interest on the same, the whole of said account amounting to $4,397.78, which was paid out of the moneys of the plaintiffs by their said guardian, the said Edward P. having had the moneys of the plaintiffs in his hands since May 19, 1864, employing the same in his banking business at the rate of ten per cent. per annum, and charging that rate against the plaintiffs in his account paid by said L. D. Cabanne as guardian of the plaintiffs; that said plaintiffs,

at the date of said final settlement on June 15, 1866, were infants, under the age of twenty-one years; that the plaintiff, Joseph Charless Cabanne, became of age October 16, 1867, and that Sarpy Carr Cabanne became of age on December 13, 1868 ; that said Edward P., executor as aforesaid, by thus converting said sum of $49,937.50 to his own uses, and in applying the same to the payment of the debts claimed to be due to him by said John P., without authority of the Probate Court of St. Louis County, was guilty of a fraud upon the rights of the plaintiffs as residuary devisees and legatees of said John P. Cabanne, and that said executor had no right in law or equity to apply said sum even in part to the payment of any debt due him by said John P. Cabanne, or said firm of Cabanne, Suber & Tesson, until his claim against said estate had been properly passed upon and allowed by said St. Louis Probate Court; that until after said Tesson became bankrupt on January 6, 1868, and until within a year last past, they were ignorant of said fraud and of the manner of its perpetration, except that about two years ago, and after said bankruptcy, they learned that Edward P. retained money belonging to them, and it was only in the prosecution of a suit against the estate of said Edward P. Tesson in bankruptcy, and from an examination of the books of said Tesson since he was adjudged a bankrupt, that they learned how said fraud was perpetrated.

Although the said Edward P. Tesson, executor of the said John P. Cabanne, having failed to present his demands against the estate of John P. Cabanne for allowance to the St. Louis Probate Court, was barred by the Statute in such cases made and provided, from retaining his demand out of any money received by him as executor, yet the plaintiffs being willing to do equity, are ready to allow all just claims in favor of said Edward P. Tesson, or of Tesson & Danjen, or the subsequent firm of Tesson, Son & Co. against said John P. Cabanne, or said firm of Cabanne, Suber & Tesson, and they are willing an account should be taken and stated upon the terms of allowing the demands of said Tesson, and Tesson & Danjen, allowing payments made after final settlement in the Pro-

bate Court, charging all sums received and correcting all errors in the accounts as they appear upon the books of said Tesson & Danjen, and of Tesson, Son & Co.

They state, further, that in a proceeding in the United States District Court, by these plaintiffs against Robert K. Woods, assignee in bankruptcy of said Tesson, Son & Co., and of said Edward P. Tesson, an account was taken and stated, of the amount due by said Tesson, as executor, to these plaintiffs, and a balance was found due the plaintiffs, with interest to the date of the bankruptcy on Jan 6, 1868, of the sum of $18,-030.75. Any dividend they may receive upon said allowance, they will credit upon the demand made in this suit against the defendants.

In consideration of the premises, plaintiffs pray, that said final settlement of his administration of the estate of said John P. Cabanne, made by said Edward P., as executor as aforesaid, and the said annual settlements may be set aside as fraudulently made; that an account may be stated of said sum of forty-nine thousand nine hundred and thirty-seven dollars and fifty cents received by said executor on May 29, 1864, from the sale of the said Bobtail Lode Gold Mine belonging to said John P. Cabanne, and in his will devised to the plaintiffs, showing what sum is justly due the plaintiffs, after allowing all debts due by said John P. Cabanne to said Edward P. or to said Tesson & Danjen, or to said Tesson, Son & Co.; and that, for the balance thus found due, plaintiffs may have judgment against the defendants for the penalty of said bond, to be satisfied by the payment of the balance thus found due; And that they may have such other and further relief as to the court may seem meet, etc.

The defendants demurred to this petition, assigning as grounds for their demurrer :

First—That the said amended petition does not state facts sufficient to constitute a cause of action against this defendant.

Second—That said amended petition shows, that the proceeds of the sale of said Bobtail Lode Gold mine, and the said

mine itself, were not assets in the hands of said Tesson as executor of said Cabanne, and that as such executor he had no control of said mine, or of the proceeds of the sale thereof, and that the proceeds which he received on the sale of said mine were not accounted for by him as executor under the letters granted to him by the St. Louis Probate Court.

Third—That the acts and doings of said defendant, Tesson, if true, would make him accountable as trustee in a court of equity for the profits he made in the purchase of said certificate from the said Lathrop, but do not make him accountable as executor, for the reason, among others, that the said gold mine was real estate, not subject to be administered according to or under the laws of this State.

Fourth—The amended petition does not show any sufficient reason why the accounts of said Tesson should be overhauled, or his settlements in the Probate Court set aside.

The petition was adjudged insufficient, and plaintiffs declining to amend, judgment on account of such insufficiency went against them.    The propriety of this ruling will now be considered.

So far as concerns the realty, a will beyond the jurisdiction where it is probated is inoperative, and has no extra-territorial force or validity; and the executor of such will cannot, because of his appointment in accordance with the laws of *one* State, thereby acquire authority to sue for, or in any manner intermeddle with, the property or effects of his testator, whether real or personal, in *another* State, unless the will be there proven, or the laws of such State dispensing with the probate anew confer the requisite permission. (Kerr vs. Moon, 9 Wheat., 565; Doe vs. McFarland, 9 Cranch., 151; Sto. Conf. L., § 474; McCormack vs. Sullivant, 10 Wheat., 192; Lucas vs. Tucker, 17 Ind., 41; Wills vs. Cowper 1 & 2 Ohio, 312.)

Under the circumstances then, as detailed in the petition, Cabanne, the testator, must be regarded as having died intestate as to whatever lands in the Territory of Colorado he was possessed of at the time of his decease; and those lands of course,

in consequence of his intestacy, descended in conformity to the laws of that Territory to his heirs at law. But as to who those heirs are, no information is afforded us. There is not the remotest information contained in the petition, that the plaintiffs are those heirs, nor is it shown that the plaintiffs had any title, either legal or equitable, in the property in Colorado. If they had no interest in the land itself, they certainly could have none in the proceeds arising from the sale thereof.

It being out of the power of the executor, as such, to have any control over, or right to interfere with, the property situate in Colorado, it must inevitably follow, that neither he nor his sureties can, in consequence of any acts done in Colorado, be held liable on the bond given for the faithful performance of the duties pertaining to the executorship in this State.

Whether Edward P. Tesson could, under proper averments made by the proper parties, be held chargeable as *trustee* for the misapplication of the funds received, it is wholly unnecessary to discuss, as no such case is here presented; the petition being drawn on a widely different theory, and looking to a recovery on the *bond alone.*

Again, it is not shown whether the money collected, with which the purchase of the certificate of sale of the Bobtail Lode Gold Mine was effected, belonged to the estate of the testator, or to the firm of Cabanne, Suber & Tesson, and if to the latter, the credit for the amount realized from the sale in New York of the mine was rightly given and entered on the books of Tesson & Daujen, in favor of the firm whose funds purchased the certificate from Lathrop.

Any responsibility, therefore, which would attach to Edward P. Tesson in consequence of his mis-appropriation of the funds of the firm above referred to, would have existence only as between him and the representatives of said firm.

The petition exhibits other objectionable features, which, although not unobserved, will, as they are not pointed out in the demurrer, pass unnoticed.

It will thus be easily seen, that there are four grounds upon which the ruling of the court below may be readily and satisfactorily upheld, and why no recovery can be had on the bond:

1st. No right nor capacity is shown on the part of the plaintiffs to sue.

2nd. The money was not collected by the executor as executor.

3rd. To whom the money belonged, with which the purchase of the certificate of sale was obtained, does not appear.

4th. And from aught to the contrary appearing, the money realized in New York was properly credited to the firm of Cabanne, Suber, & Tesson.

In consequence of the foregoing, the petition stated no cause of action, and the judgment will be affirmed. All the judges concur.